# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

)
NEW HAVEN FIREFIGHTERS )
LOCAL 825, )
)     Civil Action No. 3:14-cv-716 (CSH)
        Plaintiff, )
)
v. )
)
CITY OF NEW HAVEN, TONI HARP, )
MICHAEL BRISCOE, )
ELDRON MORRISON, and )     **MAY 5, 2015**
DANIEL DELPRETE, )
)
        Defendants. )
_____)

## MEMORANDUM IN ADVANCE OF ORAL ARGUMENT

**HAIGHT, Senior District Judge:**

Michael Briscoe is a defendant in a quo warranto action brought pursuant to a Connecticut

state statute by plaintiff New Haven Firefighters Local 825 ("Local 825" or "the Union") in the

Superior Court of the State of Connecticut, Judicial District of New Haven.  Briscoe removed the

action to this Court by filing a Notice of Removal [Doc. 1] which recited that the action was being

removed pursuant to the Civil Rights Removal Act, 28 U.S.C. § 1443(1).

Briscoe's theory of the case is that Local 825 filed its quo warranto action in state court "in

retaliation for Briscoe's assertion of his federal rights to racial equality, rights protected by the Civil

Rights Act of 1866, 42 U.S.C. § 1981, and [by] Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq*."  Doc. 1, ¶ 7.

Local 825 has moved to remand the case to the Connecticut Superior Court.  The Union's

theory of the case is that 28 U.S.C. § 1443(1) does not apply to the action it commenced in state

1

court, and in consequence Briscoe's removal of the action to this federal court was improvidently made.  Briscoe opposes a remand.

## I

Local 825's motion for remand was fully briefed, and the Court undertook to schedule oral argument.  However, during the course of that scheduling, counsel for all parties expressed the view that oral argument was not desired, and the motion could be decided on the briefs.

The Court has considered the briefs, which are interesting and ably presented.  I now conclude that counsel can furnish further valuable assistance to the Court with respect to the proper resolution of the remand motion by presenting oral argument.  The purpose of this Memorandum is to indicate the Court's preliminary views and identify the questions counsel should address in their arguments.  It should be stressed that the Court has not reached any decision on Local 825's motion to remand the case.  This exercise is intended to assist the Court in deciding the motion.

## II

Briscoe claims to have removed the action commenced by the Union pursuant to 28 U.S.C. § 1443(1), which provides:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof . . . .

In *Davis v. Glanton,* 107 F.3d 1044, 1047 (3d Cir. 1997),[1] Judge Becker said pointedly about

---

[1] *Cert. denied*, 522 U.S. 859 (1997).

§ 1443(1):

> While the language of this section is opaque, the jurisprudence has made clear that Congress has crafted only a narrow exception to the rule that a state court action may be removed to a federal district court only if federal jurisdiction is evident on the face of the plaintiff's well-pleaded complaint . . . .

The "jurisprudence" Judge Becker had in mind consists principally of two cases the Supreme Court decided on the same day, *State of Georgia v. Rachel,* 384 U.S. 780 (1966), and *City of Greenwood v. Peacock,* 384 U.S. 808 (1966), together with *Johnson v. Mississippi*, 421 U.S. 213 (1975), a later Supreme Court decision that analyzed the holdings and effects of *Rachel* and *Peacock.*

*Rachel*, *Peacock* and *Johnson* all involved prosecutions for violations of state laws. The defendants, asserting deprivations of federal constitutional or statutory rights, invoked § 1443(1) and removed the cases to federal district courts. In the Supreme Court, one removal succeeded and the other two were remanded. In *Rachel,* defendants were asked to leave restaurant premises solely for racial reasons. Federal civil rights law gave them the right to remain in the restaurant after the proprietor asked them to leave, and further provided that "no State should even attempt to prosecute them for their conduct."[2]  The Court held in *Rachel* that in those circumstances, the mere pendency of prosecutions for trespass based on defendants' refusal to leave was sufficient basis for prediction that they would be "denied or cannot enforce" federal civil rights in state court, thereby justifying removal under § 1443(1). *Peacock* held that where defendants engaged in community street activity urging Negroes to exercise their rights under federal equal civil rights laws and were prosecuted under various state laws, § 1443(1) did not apply and the removed case was remanded. Justice Stewart, who wrote the Court's opinions in both cases, explained the different results:

---

[2]  *Peacock*, 384 U.S. at 826 (describing the factual circumstances in *Rachel*).

3

> The present case [*Peacock*] differs from Rachel in two significant respects. First, no federal law confers an absolute right on private citizens – on civil rights advocates, on Negroes, or on anybody else – to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. Second, no federal law confers immunity from state prosecution on such charges.

*Peacock*, 384 U.S. at 826-27 (footnote omitted).   This passage echoes the two-prong test for applicability of § 1443(1) Justice Stewart included in his companion opinion in *Rachel*:

> Section 1443(1) entitles the defendants to remove these prosecutions to the federal court only if they meet both requirements of that subsection.  They must show both that the right upon which they rely is a "right under any law providing for . . . equal civil rights," and that they are "denied or cannot enforce" that right in the courts of Georgia.

*Rachel*, 384 U.S. at 788.

In *Johnson,* defendants were charged in a state prosecution with conspiring to bring about a boycott of business establishments in Vicksburg, Mississippi, because of their alleged racial discrimination in employment.  Defendants removed the case under § 1443(1) on the alleged grounds that the state statutes underlying the prosecutions were unconstitutional, there was no basis in fact for the charges, and their prosecution otherwise denied them their constitutional rights.   The Supreme Court, in an opinion by Justice White, reviewed its holdings in *Rachel* and *Peacock*, held that "[w]ith our prior cases in mind, it  is  apparent, without further discussion that removal under § 1443(1) was not warranted" based solely on those allegations by defendants, and added: "Here, as in *Peacock*, there is no 'federal statutory right that no State should even attempt to prosecute them for their conduct.'" 421 U.S. at 227 (citing and quoting *Peacock*).  Justice Marshall's dissent contains his summary of the two earlier decisions:

4

> As the Court today observes, *Rachel* and *Peacock* imposed sharp limitations on the scope of the removal statute. The statute was held to permit removal only in the rare case in which (1) the federal right at issue stemmed from a law providing expressly for equal civil rights; (2) the conduct with which the removal petitioners were charged was arguably protected by the federal law in question; and (3) the federal law granted the further right not only to engage in the conduct in question, but to be free from arrest and prosecution by state officials for that conduct.

421 U.S. at 229.

Analysis of these Supreme Court decisions brings us to Judge Becker's more recent opinion for the Third Circuit in *Davis v. Glanton,* 107 F.3d 1044 (1997). *Davis* applies the *Rachel* two-prong test of § 1443(1)'s applicability to a civil case as well as to a criminal prosecution, which is of course appropriate, since the statute by its terms applies to "civil actions or criminal prosecutions."

In some respects, the facts in *Davis* resemble those in the case at bar. *Davis* involved disputes concerning the Barnes Foundation, a Pennsylvania institution, almost all of whose Trustees were African-American. On January 18, 1996, the Barnes Trustees filed a civil rights action against a Township and its Board of Commissioners, asserting claims under 42 U.S.C. §§ 1983 and 1985(3). The Trustees alleged that the Commissioners enforced local rules and regulations "against the Foundation more aggressively than they did against other similarly situated institutions," adverse treatment that "was motivated by racial prejudice." 107 F.3d at 1046. On March 4, 1996, the Commissioners filed a defamation action against the Trustees in a Pennsylvania state court. The Commissioners claimed that the Trustees had defamed them in statements made to a local newspaper, and in "statements made in the Barnes Foundation's complaint in the federal civil rights action." *Id*.

Invoking 28 U.S.C. § 1443(1), the Trustees filed a notice of removal of the Commissioners'

state court defamation action to the federal district court.  In support of that removal, the Trustees

contended that

> the defamation suit represents an attempt by the Commissioners to
> retaliate against the Trustees for exercising their federally protected
> rights.  Indeed, the Trustees assert that the very filing of the
> defamation action violates their civil rights, and, at all events, that the
> Foundation and the Trustees will be denied their right to be free from
> unconstitutional race discrimination if the Commissioners are
> permitted to proceed in state court.

*Id.*  The Commissioner's retaliatory intent, the Trustees argued, should be inferred from the timing

of events:

> They emphasize that the Commissioners filed their defamation action
> soon after the Trustees filed the federal civil rights action, and as such
> the state action can be viewed only as a means to intimidate and
> retaliate against the Trustees for pursuing their federal action.

*Id*. at 1050.  In the Trustees' view, "the mere pendency of the state court defamation action violates

their federal civil rights as prescribed in § 1985(3)." *Id*.

The Commission*ers* in *Davis* moved to remand their defamation action to the state court.

The Trustees opposed remand.  The district court granted the motion and remanded the case.  The

Trustees appealed from the remand.  The Third Circuit affirmed it.

Judge Becker's opinion for the court of appeals begins with a sensitive and perceptive

observation:

> Although the Trustees present an *emotionally appealing* argument for
> removal, we conclude that they have failed to satisfy the narrow and
> well-defined requirements for § 1443(1) removal as explicated in
> *State of Georgia v. Rachel*, 384 U.S. 780 (1966), and *City of
> Greenwood v. Peacock*, 384 U.S. 808 (1966).  We will therefore
> affirm the order of the district court remanding the removed action to
> the state court from whence it came.

*Id.* at 1044 (emphasis added) (lateral citations omitted).  This emphasized phrase resonates in the

6

case at bar, where emotions on all sides have been engaged since the New Haven Fire Department promotion examinations in 2003 ushered in a long and continuing winter of discontent. "Local 825's present lawsuit is payback," Briscoe says in his brief opposing remand, Doc. 21 at 1, a noun more redolent of outraged emotion than the dry and seemingly detached language of the law.

Judge Becker began by restating the test for removal the Supreme Court laid down in *Rachel*. In *Rachel,* the Third Circuit said in *Davis*, "the Supreme Court articulated the precise circumstances required to sustain removal under § 1443(1), clarifying that removal requires satisfaction of a two-pronged test: a state court defendant must demonstrate both (1) that he is being deprived of rights guaranteed by a federal law 'providing for . . . equal civil rights'; and (2*)* that he is 'denied or cannot enforce' that right in the courts of the state." 107 F.3d at 1047 (quoting *Rachel*, 384 U.S. at 788). Applying that test to the facts in *Davis*, the Third Circuit said:

> The status of § 1985(3) as an "equal civil rights" statute is thus unclear, with strong arguments on both sides in terms of the jurisprudence. Fortunately, however, we need not reach this close and difficult issue because we conclude, for reasons described herein, that the Trustees have failed to satisfy the second *Rachel* prong.

107 F.3d at 1050.

That failure on the part of the Trustees to satisfy *Rachel*'s second prong resulted from the fact that § 1985(3), the civil rights statute which the Trustees alleged the Commissioner violated by suing the Trustees for defamation in the state court, "does not confer an absolute right on private citizens to defame others. Nor does it confer immunity from state civil actions brought to seek redress for those statements." *Id*. The Third Circuit affirmed the district court's order of remand. Judge Becker concluded his opinion with these reflections:

> In the present case, the Trustees have not cited to a specific federal law that prohibits retaliation against, or provides immunity for, their

allegedly defamatory conduct.

> We are not insensitive to the point so effectively made by the Trustees' able counsel that the events that form the basis of the state court defamation action stem from the same set of facts as those underlying the federal civil rights action, and that, since allegations of racial bias suffuse the litigation, which is anchored in federal court, the defamation action too must be heard there in order to assure that civil rights are not compromised. But this view ignores the rigors of federalism, and the technical precepts of governing by dint of which the principles of federalism are translated into reality.

*Id.* at 1052.

### III

In the case at bar, Local 825 echoes the Third Circuit's decision in *Davis.* Its main brief [Doc. 16-1] starts with the proposition that the Connecticut Superior Court is the proper forum to adjudicate the Union's quo warranto action, which is based on a Connecticut statute, Conn. Gen. Stat. § 52-491, and "lies only to test the defendant's right to hold office de jure," *Cheshire v. McKenney*, 182 Conn. 253, 256 (1980), an exercise confined to examining the terms of local contracts such as a collective bargaining agreement, city civil service rules and regulations, and a city charter. Briscoe would bear the burden "to show, by a preponderance of the evidence, a complete title to the office in dispute." *Dumais v. Underwood*, 47 Conn. App. 783, 788 (1998), *cert. denied*, 244 Conn. 918 (1998). A quo warranto action, if successful, unseats the office holder whose legitimacy was challenged, but does not fill the vacancy. If the unseated office holder "can thereafter establish his clear right to the position, he may bring an action in mandamus to seek his own appointment." *New Haven Firebird Soc'y v. Bd. of Fire Comm'rs*, 219 Conn. 432, 436 (1991).

Local 825 surveys this landscape, and argues (1) that "Briscoe does not demonstrate that any state law proceeding or statute is unconstitutional or otherwise denies or prevents the enforcement

8

of his civil rights," and (2) that Briscoe "failed to demonstrate that either Title VII or § 1981 immunized him from the state court quo warranto proceeding and that such a state court proceeding would deny or prevent him from enforcing his equal civil rights."  Main Brief, Doc. 16-1, at 13.

Briscoe responds in part that he "should not have to defend the merits of a lawsuit whose goal is to retaliate against and harass him for his exercise of federally-protected rights."  Opposition Brief [Doc.21], at 1.   "Federal law," the argument proceeds, "provides Briscoe the right to be free from such retaliation.  Moreover, Briscoe should be able to counterclaim for retaliation to recoup the costs of defending from Local 825's spiteful lawsuit."  *Id.,* at 1-2.  Briscoe submits that this federal court is the sole and essential forum for the vindication of his federally-protected rights, because "State law, including in particular Conn. Gen. Stat. § 52-122, prohibits Briscoe from protecting or enforcing his federal rights in the quo warranto action in state court."  Notice of Removal [Doc. 1], ¶ 22.

The Union's reply brief argues that Briscoe's protestations of prejudice arising from a professed inability to assert federal civil rights as defenses in the state quo warranto action are illusory, since the only issue in that case will be whether Briscoe had "a clear, legal right to occupy the position," and "no federal laws regarding civil rights are implicated in a Connecticut quo warranto proceeding."  Reply Brief [Doc. 23], at 2, 3.

Briscoe's perception of what should happen next in the case is stated thus :  "After removal, this  Court should determine that the quo warranto action is retaliatory and violates Briscoe's federal rights and it should then dismiss the case."  Notice of Removal, ¶ 23.  That brisk declaration prompts some questions.

For example, let us assume that the Court denies Local 825's motion to remand, conducts a full plenary trial on all contested issues, and delivers a Ruling which arrives at two conclusions:

1.  Local 825's quo warranto complaint was well founded because Briscoe did not obtain or hold his new position as Director of Public Safety Communications *de jure*.  That appointment was not made in compliance with applicable contracts, rules, regulations and charters.  Rather, Briscoe's appointment was made in disregard and violation of those sources of authority, and solely as the result of Mayor Harp's extra-legal personal choice: *de whim*, not *de jure*.

2.  The decision of Local 825 officers to file the quo warranto action against Briscoe in the state court was solely motivated by their mean-spirited desire to retaliate against Briscoe for his energetic, tireless (and for the Union officers, unwelcome and inconvenient) efforts to assert his civil rights in the context of the 2003 Fire Department examinations.  Local 825's professions of concern about the integrity of the collective bargaining process are no more than pretext.

The careful reader will understand that at this early stage, the Court neither anticipates nor predicts that either conclusion, or anything resembling them, would actually emerge at the end of a trial.  The question I pose is purely conceptual, and it is this: When Briscoe argues that the Court should dismiss the removed quo warranto action if it was commenced for retaliatory reasons, does that mean that Conclusion (2) trumps Conclusion (1), so that, on these assumed conclusions, Briscoe retains his position even though  he did not obtain or hold it de jure?  If so, federal civil rights law would countermand and replace a state public policy statute.  What is the source of this Court's authority to deliver such a judgment?

**IV**

I will not extend this Memorandum with further questions that arise in this challenging and important case.  The basic issue is whether Briscoe's removal of Local 825's state court quo warranto action, purportedly pursuant to 28 U.S.C. § 1443(1), fails to comply with the requirements of that

statute as articulated in the controlling cases  (as Local 825 contends in its motion to remand), or whether the removal fully complies with those requirements (as Briscoe contends in his opposition to remand).  Counsel should be prepared to discuss all relevant factors and elements.

The oral argument will be held on Thursday, **May 14, 2015**, at **2:00 p.m.** in the Courtroom on the 17th floor of the Connecticut Financial Center, 157 Church Street, New Haven, Connecticut. CT.

It is SO ORDERED.

Dated:   New Haven, Connecticut
            May 5, 2015


                                             _/s/Charles S. Haight, Jr._____
                                             CHARLES S. HAIGHT, JR.
                                             Senior United States District Judge

11